In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00464-CV

_____

CELTIC PROPERTIES, L.C.

V.

CLEVELAND REGIONAL MEDICAL CENTER, L.P.

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CV70930

**MEMORANDUM OPINION**

Appellant, Celtic Properties, L.C. (Celtic or appellant), the plaintiff in the proceeding below, appeals from an Order Granting Final Summary Judgment to Appellee, Cleveland Regional Medical Center, L.P. (CRMC or appellee), the defendant in the proceeding below.[1] This case relates to a dispute between the

_____

[1]Community Health Systems, Inc. and CHS/Community Health Systems, Inc. were also named as defendants in the original proceedings below but are not

1

parties about a commercial lease of an office building located in Cleveland, Texas.

We affirm.

UNDERLYING FACTS

This is the second time the underlying suit has been on appeal to this court. The current appeal concerns the trial court's Final Summary Judgment, which was rendered after a remand following this court's opinion in *Cleveland Regional Medical Center, L.P. v. Celtic Properties, L.C.*, 323 S.W.3d 322 (Tex. App.—Beaumont 2010, pet. denied) (hereinafter referred to as the "first appeal").

In the first appeal[2], we affirmed in part, reversed and rendered in part, and reversed and remanded in part the judgment of the trial court. More specifically, we stated:

> We reverse the portions of the judgment finding defendants liable for tortious interference with an existing contract and intentional invasion of property rights and render judgment that plaintiff take nothing on those causes of action. We reverse the portion of the judgment finding defendants liable for negligence and awarding damages for negligence and remand to the trial court for a new trial. We affirm the judgment in all other respects.

_____

named as defendants in the Plaintiff's Sixth Amended Petition, the live pleading at the time the trial court granted the Final Summary Judgment.

[2]The factual background of the dispute between the parties as it relates to the jury trial and the prior appeal is explained in detail in our previous opinion. *Cleveland Regional Medical Center, L.P. v. Celtic Properties, L.C.*, 323 S.W.3d at 328-32.

323 S.W.3d at 354. The majority affirmed the judgment for breach of contract and for damages in the amount of $318,222.77 and attorney's fees in the amount of $193,000.

After the case was remanded to the trial court, Celtic filed its Fifth Amended Petition, wherein it reasserted a negligence claim and a breach of contract claim. As stated in the Fifth Amended Petition, Celtic described its breach of contract claim as follows:

> [I]n failing to maintain and protect the Property from damage, and in causing further damage to the Property, CRMC breached the parties' contract. The Letter Agreement is an enforceable agreement, and it expressly refers to and incorporates the Master Lease (the June 15, 1994 Lease and July 1996 first amendment thereto).

On September 24, 2012, CRMC filed a traditional and no evidence motion for summary judgment on all of Celtic's remaining theories as asserted in Celtic's Fifth Amended Petition. While CRMC's motion for summary judgment was pending, on November 8, 2012, Celtic filed its Sixth Amended Petition, wherein Celtic asserted a negligence claim, a breach of contract claim with further allegations that the breach of contract claim relates only to damages that occurred between the time of the first trial and the final judgment, and a waste claim. On November 8, 2012, Celtic also filed a response to the motion for summary judgment that was styled as "Plaintiff's Response to Defendant's Motion for

3

Traditional Summary Judgment." In that response, Celtic references the affidavit of John Murphy (the Murphy Affidavit) as being attached thereto, but the response in the record does not have a copy of the affidavit. Nevertheless, the record indicates that CRMC filed a Reply to Plaintiff's Response on November 14, 2012, wherein CRMC included several objections to the Murphy Affidavit. On November 15, 2012, the trial court sustained most of CRMC's objections to the Murphy Affidavit. On February 8, 2013, the trial court granted CRMC a partial summary judgment on Celtic's negligence claim, but denied a summary judgment on the waste and breach of contract claims as asserted in the Sixth Amended Petition.

On April 9, 2013, CRMC filed another traditional and no evidence motion for summary judgment that it styled as its "Motion for Final Summary Judgment," asking the trial court to grant summary judgment on the two remaining claims—the breach of contract and negligent waste claims. On June 11, 2013, Celtic filed Plaintiff's Response to Defendant's Motion for Final Summary Judgment. The Murphy Affidavit was attached as an exhibit to Celtic's Response to Defendant's Motion for Final Summary Judgment. CRMC filed a Reply to Plaintiff's Response, and therein CRMC stated "Celtic has once again offered the affidavit of Dr. John Murphy in response to [CRMC]'s motion for summary judgment. This is the exact

4

affidavit that Celtic previously filed in response to the [CRMC]'s prior September 2012 motion." CRMC renewed its previous objections to the Murphy Affidavit and urged additional grounds for the trial court to disregard the affidavit. The trial court granted a final summary judgment for CRMC finding that CRMC's "Motion for Traditional and No Evidence Summary Judgment . . . is meritorious," and granting the Defendant's Motion for Summary Judgment. On August 12, 2013, the trial court also entered an Order on Defendant's Re-Assertion of Prior Objections to the Affidavit of Dr. John Murphy, wherein the trial court sustained two additional objections and overruled a third objection to the Murphy Affidavit. Celtic filed a motion for new trial, and CRMC filed a response to the motion for new trial. The motion for new trial was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). Celtic timely filed a notice of appeal.

## ISSUES ON APPEAL

In three stated issues, Celtic contends the trial court erred in granting CRMC a final summary judgment on Celtic's negligence, breach of contract, and waste claims. First, Celtic argues that the trial court erred in granting CRMC's no evidence motions for summary judgment because Celtic contends it produced "sufficient evidence of each element" of its claims. In support of its first issue, Celtic argues that the Murphy Affidavit was more than a scintilla of evidence that:

5

CRMC was "negligent in performing its remediation of the leased premises[,]" CRMC "breached its contract by failing to complete remediation of the leased premises[,]" and CRMC "committed waste by failing to remediate and/or repair the lease premises prior to abandoning it." Celtic contends that it established with the Murphy Affidavit that "[p]rior to the start of the original trial in 2007, CRMC had begun a remediation of the mold damage in the building. And during the original trial CRMC's attorneys represented to the trial court and Celtic that CRMC fully intended to complete that remediation." In Celtic's second issue, Celtic contends that the trial court erred in granting CRMC's no evidence motions for summary judgment because the motions were "general motions that did not list the specific elements of each claim on which [CRMC] believed Celtic could produce no evidence." And in Celtic's third issue, Celtic argues that the trial court erred by granting CRMC's "Traditional Summary Judgment on Plaintiff's negligence, contract[,] and waste causes of action because Defendant had a contractual duty to not damage the property and/or repair any damage to the property beyond normal wear and tear." As part of its third issue, Celtic contends that CRMC, "as a lessee under a lease contract, had a common law duty to not damage the lease premises beyond normal wear and tear, and CRMC breached that duty by beginning but not completing the remediation project, thereby committing

6

negligence." Celtic also argues that CRMC had "a contractual duty to repair damages to the lease premises . . . and [CRMC] breached that duty when it failed to do so and abandoned the premises on November 30, 2007," CRMC "was guilty of committing waste," Celtic "could re-plead these issues after remand," Celtic's claims "are not barred by the statute of limitations," and that Celtic's claims "are not barred by estoppel, the law of the case doctrine, res judicata or this Court's remand order."

CRMC argues that the trial court correctly entered a final summary judgment on all three of Celtic's claims and that Celtic waived its complaints on appeal by failing to bring forth a sufficient record to show error requiring reversal. Further, CRMC contends that the summary judgment was proper because CRMC failed to meet its burden of proof on one or more elements of its claims and that, as a matter of law, Celtic has no claim for negligence, waste, or breach of contract.

### STANDARD OF REVIEW

We review a trial court's ruling on a traditional summary judgment motion de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We "consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). We

7

"consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion." *Id.* at 756. "A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

Rule 166a(i) of the Texas Rules of Civil Procedure provides that "[a]fter adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *See* Tex. R. Civ. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). To defeat a no-evidence motion, the nonmovant must present some evidence raising a genuine issue of material fact as to the elements challenged by the moving party's no-evidence motion. *Id.*; *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 507 (Tex. App.—San Antonio 2013, pet. denied). In responding to a no-evidence motion for summary judgment, the nonmovant must produce more than a scintilla of evidence on the challenged elements to avoid summary judgment. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Forbes Inc. v. Granada Biosciences,*

8

*Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists when the evidence allows reasonable and fair-minded people to differ in their conclusions. *Id*. Less than a scintilla of evidence exists when the evidence does "'no more than create a mere surmise or suspicion as to a fact.'" *King Ranch*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). When, as here, the trial court does not specify the grounds upon which it ruled, the summary judgment may be affirmed on any of the meritorious grounds set forth in the movant's motion for summary judgment. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

### SCOPE OF REMAND

Because we previously affirmed in part, reversed and rendered in part, and reversed and remanded in part in the prior appeal, before we review the summary judgment we must determine the scope of the remand from the prior appeal. Generally, "[w]hen a case has been remanded, the cause is pending and amended pleadings may be filed in pending cases pursuant to [rule] 63." *U.S. Fid. and Guar. Co. v. Beuhler,* 597 S.W.2d 523, 524-25 (Tex. Civ. App.—Beaumont 1980, no writ); *see also Sepulveda v. Krishnan,* 839 S.W.2d 132, 137 n.2 (Tex. App.—Corpus Christi 1992), *aff'd,* 916 S.W.2d 478 (Tex. 1995). However, when an appellate court remands a case and limits a subsequent trial to a particular issue,

9

the trial court is restricted to a determination of that particular issue. *See Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1986). In interpreting the mandate of the appellate court, we look not only to the mandate itself but also to the opinion of the court. *Id.*

> This court's mandate from the first appeal contains the following language:

> This cause was heard on the record of the Court below, and the same being considered; it is the opinion of this Court that there was error in the judgment. It is therefore ordered that we reverse the portions of the judgment finding defendants liable for tortuous [sic] interference with an existing contract and intentional invasion of property rights and render judgment that plaintiff take nothing on those causes of action. We reverse the portion of the judgment finding defendants liable for negligence and awarding damages for negligence and remand to the trial court for a new trial. We affirm the judgment in all other respects. The trial court's judgment is AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.

The following excerpts from this Court's opinion in the prior appeal relate specifically to the negligence claim and the Court's instruction to the trial court on remand:

> In issue six, appellants complain that the trial court erred by submitting a defective question and instruction on Celtic's negligence claim.
> . . .

> [CRMC] pleaded the affirmative defense of contributory negligence. *See* Tex. R. Civ. P. 94. [CRMC] also pleaded that Celtic's claims were "barred, in whole or in part, by the doctrine of proportionate responsibility and contribution."

10

. . .

[W]e find more than a scintilla of evidence to support the submission of Celtic's contributory negligence to the jury. [footnote 7 omitted]

. . .

We reverse the portion of the judgment finding defendants liable for negligence and awarding damages for negligence and remand to the trial court for a new trial.

323 S.W.3d at 343-54.

After examining the mandate and opinion, we conclude that we remanded the case to the trial court solely on the negligence issue, and that the parties were not free to retry claims that were previously decided. The remand was further clarified in footnote 7 of our opinion as follows:

> [7]While Celtic submitted this as a general negligence issue we recognize that a tenant's breach of the duty to exercise reasonable care to protect the leased premises from injury other than normal wear and tear is in essence a breach of the duty to prevent negligent waste. *See King's Court Racquetball v. Dawkins*, 62 S.W.3d 229, 233 (Tex. App.—Amarillo 2001, no pet.); *Sullivan v. Booker*, 877 S.W.2d 370, 372 (Tex. App.—Houston [1st Dist.] 1994, writ denied). In fact, Celtic cited *Dawkins* in its brief in support of its motion to enter judgment, for its contention that the defendants' negligence was properly submitted to the jury. We note that appellants argued in their motion for new trial that allowing plaintiff to recover under both contract and tort theories of liability was improper. However, appellants do not properly raise or pursue this issue on appeal. Although the propriety of allowing recovery under both contract and tort theories of liability is questionable, we refrain from addressing the merits of that issue in this opinion.

11

*Id.* at 355 n.7.

### ABSENCE OF A RESPONSE TO THE NO-EVIDENCE PORTION OF THE ORIGINAL MOTION FOR SUMMARY JUDGMENT

In CRMC's original motion for summary judgment filed on September 24, 2012, CRMC asserted both no-evidence and traditional grounds for a summary judgment as to all claims asserted in Celtic's Fifth Amended Petition. According to CRMC, Celtic filed two separate responses to the original motion for summary judgment, "[o]ne address[ing] [CRMC]'s no evidence grounds, while the other addressed the traditional grounds." However, the only response to the original motion for summary judgment in the record is styled as "Plaintiff's Response to Defendant's Motion for Traditional Summary Judgment."[3] CRMC argues that Celtic has failed to "ensure that an adequate record was filed" in the Court of Appeals because Celtic's response to the original no-evidence motion for summary judgment is not included in the appellate record.

---

[3]The Plaintiff's Response to the Defendant's No Evidence Motion for Summary Judgment is not in the record. However, the parties are in agreement that Celtic filed a response to the No Evidence Motion for Summary Judgment, and further that Celtic attached the same Murphy Affidavit to the response that it attached to the response to the Traditional Motion for Summary Judgment. CRMC filed objections to the affidavit. The order ruling on those objections is part of the record on appeal.

The trial court granted a partial summary judgment on CRMC's "Traditional Motion for Summary Judgment" as to Celtic's negligence claim, and then the trial court initially denied CRMC's original motion for summary judgment on Celtic's waste and breach of contract claims. According to the record, CRMC's subsequent motion for final summary judgment re-asserted no-evidence and traditional summary judgment grounds, and it is the motion for final summary judgment that is the basis for the trial court's final judgment. Plaintiff's Response to Defendant's Motion for Final Summary Judgment is in the record. Additionally, according to the record, Celtic used the same Murphy Affidavit as support for Celtic's Response to the original Motion for Traditional Summary Judgment and in the Response to Defendant's Motion for Final Summary Judgment. Therefore, the absence from the appellate record of Celtic's Response to the no-evidence portion of CRMC's original motion for summary judgment is not significant to our review.

## OBJECTIONS TO MURPHY AFFIDAVIT

CRMC objected to the Murphy Affidavit when it was first referenced by Celtic in Celtic's Response to the original Motion for Summary Judgment, and then again when the same affidavit was filed by Celtic in response to the Motion for Final Summary Judgment. The trial court entered two orders in which the court

13

sustained many of CRMC's objections to substantial portions of the Murphy Affidavit, but the court did not completely strike the affidavit.

On appeal, Celtic states that "[t]he trial court erred in ruling that Dr. Murphy's affidavit was inadmissible as summary judgment proof." Celtic does not cite to the specific ruling or order of the court about which it complains, nor does Celtic explain or identify the specific objection, the basis on which the objections were sustained, or why the trial court erred in its rulings. When a party fails to object to a trial court's ruling sustaining objections to its summary judgment evidence, it waives the right to challenge that ruling on appeal even if it may otherwise have meritorious arguments. *See* Tex. R. App. P. 33.1(a)(1); *Berryman's S. Fork, Inc. v. J. Baxter Brinkman Int'l Corp.*, 418 S.W.3d 172, 190-91 (Tex. App.—Dallas 2013, pet. denied); *Cantu v. Horany*, 195 S.W.3d 867, 871-72 (Tex. App.—Dallas 2006, no pet.). Celtic has also failed to provide any legal analysis as to why the trial court erred in sustaining the particular objections to the Murphy Affidavit, and we conclude that Celtic's argument is inadequately briefed. *See* Tex. R. App. P. 38.1(i); *Goodenberger v. Ellis*, 343 S.W.3d 536, 539-40 (Tex. App.—Dallas 2011, pet. denied); *Moreno v. Quintana*, 324 S.W.3d 124, 128 (Tex. App.—El Paso 2010, pet. denied). We overrule Celtic's challenge to the trial court's rulings that sustained the objections to the Murphy Affidavit.

14

SPECIFICITY OF CRMC'S NO-EVIDENCE SUMMARY JUDGMENT MOTION

In Celtic's second issue, Celtic maintains that the trial court erred in granting CRMC's no-evidence summary judgment motions because the motions "were general motions that did not list the specific elements of each claim on which it believed Celtic could produce no evidence." According to Celtic, because both of the motions as to the no-evidence grounds were general demurrers, they should have been denied. We disagree.

The rules of civil procedure state that general demurrers shall not be used. Tex. R. Civ. P. 90. To preserve error for appellate review, a complaint must be made to the trial court by a timely request, objection, or motion that specifically states the grounds for the ruling that the complaining party sought from the trial court, and the trial court must rule or refuse to rule on the request, objection, or motion. *See* Tex. R. App. P. 33.1(a). Celtic did not preserve error on this issue. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 531 (Tex. 2010). Even if Celtic had preserved error, we conclude that the motions are not fatally defective. In CRMC's motions for summary judgment, CRMC set out the elements of each of the causes of action that were the subject of the motions and specifically stated which elements of each cause of action were lacking. Accordingly, the no-evidence motions for summary judgment gave Celtic fair notice of the bases for the motions

15

and were not fatally defective. *See Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 888 (Tex. App.—Dallas 2011, no pet.); *see also Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). Issue two is overruled.

NEGLIGENCE CLAIM

Celtic argues on appeal that the Murphy Affidavit presented more than a scintilla of evidence that CRMC was negligent in performing its remediation of the lease premises, and that the affidavit sets forth the "course of dealing between the parties, statements made by CRMC's attorneys at the first trial promising to complete the remediation work on the lease premises, the fact that CRMC abandoned the lease premises during the middle of the remediation work and left it in complete disarray," as well as the "types of damage CRMC's conduct caused[.]" Celtic does not cite to the specific portion of the Murphy Affidavit or other evidence in the record to support its arguments. Celtic further argues that "Dr. Murphy's affidavit raised sufficient evidence of the contractual relationship between the parties and CRMC's duty to make the repairs pursuant to that relationship, the fact that CRMC failed to fulfill that responsibility, and the damages Celtic suffered as a result."

16

After applying the rulings of the trial court which sustained the objections to the Murphy Affidavit as outlined in the two orders in the record, the only remaining portion of the Murphy Affidavit which could have been considered by the trial court would be as follows:

BEFORE ME, the undersigned authority, personally appeared John Murphy, who being duly sworn, deposed as follows:

*"My name is John Murphy. I am a Manager for Celtic Properties, L.C. I am at least 18 years of age and of sound mind. I have personal knowledge of the facts alleged in Plaintiff's Response to Defendant's Motion for Summary Judgment. I hereby swear that the following statements in support of Plaintiff's Response to Defendant's Motion for Summary Judgment are true and correct to the best of my ability.*

*'On or about July 15, 1994 Celtic Properties, L C. entered into a lease agreement with Cleveland Regional Medical Center, L.P. In July 1996, there was an amendment to the July 15, 1994 lease and that became what would be referred to as the Master Lease. I occupied 301-B of the Property the subject of this suit until 1999 when I became the Medical Director of Cleveland Regional Medical Center, L.P[.]"'s rural health center in Livingston, Texas.*

*Ultimately, after the trial concluded, Cleveland Regional Medical Center, L.P. vacated the property, which to my knowledge was done without notice to Celtic Properties, L.C. or to myself. Furthermore, in 2007, prior to the time of trial, without notice to or the consent of Celtic Properties, L.C., Cleveland Regional Medical Center, L.P. initiated what it later purported was a remediation repair project of the Property, which severely damaged the entire property, both suite 301-A and suite 302-B. Specifically, Cleveland Regional Medical Center, L.P. removed, without replacement or repair, sheetrock, carpet, ceiling tiles[,] electrical Wiring, AC ducts, insulation, and finishes that were never previously damaged, and*

17

*Cleveland Regional Medical Center. L.P. left open holes to the exterior of the property, Celtic Properties, L. C. was unable to lease the property for an extended period of time and forced to undertake substantial repairs to the property that Cleveland Regional Medical Center, L.P. nor was Celtic Properties, L. C. aware that Cleveland Regional Medical Center, L.P. had not made and would refuse to make the repairs and necessary remedial activities as required and as promised during the trial.*

*'As a result of the following and the time in which the causes of action actually accrued, the timing of the trial, and the fact that no discovery has taken place in this matter since the Final Judgment was signed on or about March 11,. 2008. Therefore, Celtic Properties. L.C. has not had an adequate opportunity to conduct discovery before the pending summary judgment hearing. Thus, Celtic Properties, L. C. requests additional time to conduct the necessary discovery, therefore rending [sic] the filing of a Motion for Summary judgment by Cleveland Regional Medical Center. L.P., procedurally premature.*

*'The facts contained in Plaintiff's Response to Defendant's Motion for Summary Judgment are true and correct to the best of my ability.*

*'Further affiant sayeth not."*

A negligence cause of action requires (1) a legal duty, (2) breach of that duty, and (3) damages proximately resulting from that breach. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). The partial summary judgment granted by the trial court relating to the negligence claim was expressly granted on the basis of defendant's original motion for summary judgment as a "traditional summary judgment." Celtic argues in its first and second appellate issues that the trial court erred in granting a "no-evidence summary judgment" on the negligence

18

claim. Because the record establishes that the trial court granted CRMC's a traditional summary judgment as to the negligence claim, we overrule Celtic's first and second issues regarding the negligence claim, and we need not address Celtic's argument that the Murphy Affidavit established more than a scintilla of evidence to support the negligence claim because the trial court granted a traditional summary judgment on the negligence claim.

With respect to Celtic's third appellate issue, we must determine whether or not the trial court erred in granting CRMC a traditional motion for summary judgment on the negligence claim. In our prior opinion we noted that although Celtic submitted an issue to the jury under a general negligence issue,

> we recognize that a tenant's breach of the duty to exercise reasonable care to protect the leased premises from injury other than normal wear and tear is in essence a breach of the duty to prevent negligent waste. *See King's Court Racquetball v. Dawkins*, 62 S.W.3d 229, 233 (Tex. App.—Amarillo 2001, no pet.); *Sullivan v. Booker*, 877 S.W.2d 370, 372 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

323 S.W.3d at 345 n.7. We further stated, "[a]lthough the propriety of allowing recovery under both contract and tort theories of liability is questionable, we refrain from addressing the merits of that issue in this opinion." *Id*.

In CRMC's original motion for summary judgment, CRMC argued that Celtic was not entitled to a recovery for a negligence claim because their damages were not independent from the economic losses under the alleged breach of

19

contract, and the action sounds in contract and not in tort law. Additionally, CRMC argued in its original motion for summary judgment that, as a matter of law, it owed no duty of care to Celtic. In its response to CRMC's traditional motion for summary judgment, Celtic stated: "Non-Movant claims a genuine issue of material fact exists as to Movant's claims of negligence, waste and breach of contract. As proof thereof, Non-Movant submits an affidavit, attached hereto as Exhibit 'A', as summary judgment evidence, filed with this response and incorporated by such reference for all purposes as if recited verbatim herein." However, Celtic did not elaborate on or explain what genuine issues exist on the negligence claim or how the Murphy Affidavit raises a genuine issue of material fact in relation thereto. Furthermore, Celtic completely failed to respond to CRMC's legal argument that the negligence claim is barred as a matter of law because the claim sounds in contract and not tort. Accordingly, we conclude that the trial court did not err in granting CRMC a traditional summary judgment on the negligence claim and we overrule all of Celtic's issues relating thereto.

### No Evidence as to Breach of Contract Claim regarding Failure to Complete the Remediation of the Premises

Celtic contends that the Murphy Affidavit also raised more than a scintilla of evidence in support of each of the necessary elements of its breach of contract claim. According to Celtic, "[t]he trial court had before it evidence of the contract

20

between Celtic and CRMC, a previous jury finding that the contract existed and was enforceable that was affirmed on appeal, evidence that Celtic was a principal party to the contract as landlord, evidence that CRMC had or undertook an obligation to perform the remediation work; CRMC's failure to do so, and that Celtic suffered substantial damages by that failure." In Celtic's Sixth Amended Petition, the live pleading at the time CRMC filed its Motion for Final Summary Judgment, Celtic alleged

*Count 2: Breach of Contract*

22. Without waiving the foregoing and in the alternative, Celtic would show that, in failing to maintain and protect the Property from damage, and in causing further damage to the Property, CRMC breached the parties' contract. Said breach of contract accrued after the trial on the merits was concluded, wherein the holdover tenant, CRMC, abandoned the premises after the conclusion of trial. Therefore, said breach of contract would not have accrued until after the trial was concluded and is therefore a viable cause of action. The Letter Agreement is an enforceable agreement, and it expressly refers to and incorporates the Master Lease (the June 15, 1994 Lease and July 1996 first amendment thereto). The Letter Agreement is attached hereto and its terms are incorporated herein by reference.

Celtic further alleged in its Sixth Amended Petition that the breach of contract claim relates only to damages that occurred between the time of the first trial and the final judgment.

In order to prove a breach of contract, a plaintiff must establish: (1) a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of

21

the contract by the defendant, and (4) damages sustained by the plaintiff as a result of that breach. *Grynberg v. Grey Wolf Drilling Co., L.P*., 296 S.W.3d 132, 136 (Tex. App.—Houston [14th Dist.] 2009, no pet.). As stated in Celtic's Sixth Amended Petition, Celtic claims CRMC breached the Letter Agreement "in failing to maintain and protect the Property from damage, and in causing further damage to the Property," and further that CRMC's attorney made an oral representation during trial that the remediation and repairs would be completed by CRMC, but CRMC then failed to complete the repairs after the jury trial. Celtic contends that the Murphy Affidavit established the existence of a contract and that CRMC failed to make repairs and remediate the damages it caused. But in the Murphy Affidavit, Murphy recites both events that occurred "prior to the time of trial" and then complains that CRMC "had not made and would refuse to make the repairs and necessary remedial activities as required and as promised during the trial." Celtic relies upon the jury's finding in the prior trial, and the verbal representation, if any, of CRMC's attorney during the jury trial for the basis of its breach of contract claim. Celtic's pleadings demonstrate that its post and pre-trial breach of contract claims all relate to damages resulting from a leaky water heater in 2005, mold remediation work it admits was completed by October 15, 2007, and related restoration and maintenance work allegedly not performed.

According to Celtic's Sixth Amended Petition, Celtic's breach of contract relates to the failure of CRMC to "maintain and protect the Property from damage, and in causing further damage to the Property, CRMC breached the parties' contract. Said breach of contract accrued after trial on the merits was concluded, wherein holdover tenant, CRMC, abandoned the premises after the conclusion of trial." Celtic further claims that these claims "relate back to its original petition, because these claims arise out of the same occurrence or transaction."

With respect to CRMC's Motion for Final Summary Judgment on the breach of contract claim, in Celtic's response to the motion, Celtic relies principally on the Murphy Affidavit. However, after reviewing the Murphy Affidavit (as reformed by the rulings of the trial court in sustaining the CRMC objections), we conclude that nothing within the Murphy Affidavit or other documents attached to Celtic's Response to the Motion for Final Summary Judgment provides evidence of a new breach of the Lease Agreement. According to Exhibits O and P attached to the Motion for Final Summary Judgment, CRMC gave notice of its intent to vacate the premises, and the landlord-tenant relationship formally ended no later than November 30, 2007[4], approximately one month following the jury's verdict on

---

[4]Exhibits O and P attached to the Motion for Summary Judgment indicate that CRMC provided its keys to the building to Celtic on November 8, 2007, about two weeks after the jury's verdict.

October 23, 2007. The final judgment in the underlying suit was not signed until March 11, 2008. The language in that judgment states that its "disposes of all claims and all parties." The jury's verdict and judgment as affirmed by this court in the earlier appeal cannot be used as evidence to support a new breach of contract claim arising out of the same transaction and occurrences. The Murphy Affidavit does not provide evidence of a contract enforceable against CRMC as a purported "holdover tenant," or of a contractual agreement regarding the alleged promise made at trial, or of how CRMC breached a contract after trial. Additionally, as we previously stated, the scope of remand to the trial court was limited to the negligence claim, if any. Therefore, we conclude that the trial court properly granted CRMC a no-evidence summary judgment as to Celtic's breach of contract claim, and we overrule Celtic's first issue and sub-issues relating thereto. Because we have sustained the no-evidence summary judgment on the breach of contract claim, we need not address the propriety of a traditional summary judgment on the breach of contract claim.

NO EVIDENCE OF COMMISSION OF WASTE BY FAILING TO REMEDIATE

As noted above, in footnote 7 of our prior opinion we refrained from addressing whether allowing Celtic to recover under both contract and tort theories of liability was improper, and this Court recognized that a tenant's breach of the

24

duty to exercise reasonable care to protect the leased premises from injury other than normal wear and tear is in essence a breach of the duty to prevent negligent waste. Even if the scope of the remand included a claim for waste, however, Celtic also failed to present evidence to the trial court that established a permanent injury to the reversionary interest in the property and a reduction to the overall value of the property.

> Waste is an injury to the reversionary interest in land caused by the wrongful act of a tenant or other party rightfully in possession…. Waste includes injury resulting from failure to exercise reasonable care in preserving the property. [citations omitted]

*RC Bowen Estate v. Continental Trailways*, 256 SW 2d 71, 72 (Tex. 1953).

To establish a claim of waste, a party must show: (1) permanent injury to the reversionary interest in land (2) caused by the unjustified or wrongful act of a tenant or other party rightfully in possession (3) that results in reduction in value of the property. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571-72 (Tex. 1981). Whether couched in terms of contract or tort, there must be evidence of a wrongful act or unreasonable conduct by the tenant. *Sullivan v. Booker*, 877 S.W.2d 370, 372 (Tex. App.—Houston [1st Dist.] 1994, writ denied). The measure of damages for a waste claim is the decrease in market value caused by the injury. *See Hall v. Hubco, Inc.*, 292 S.W.3d 22, 35 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (op. on reh'g); *cf. Porras v. Craig*, 675 S.W.2d 503, 504 (Tex.

1984) (When injury to land is permanent, damages are measured by loss in market value.).

Other than the Murphy Affidavit, Celtic offered no evidence in support of its claims. And we find nothing in the record before us that established any decreased value of the building or permanent injury. Murphy's conclusory statement that the property was "damaged" is insufficient to satisfy Celtic's burden. *See Plotkin v. Joekel*, 304 S.W.3d 455, 487 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (a conclusory assertion does not raise a genuine issue of a material fact in a summary judgment). The trial court properly granted the no-evidence summary judgment as to Celtic's waste claims. We overrule all of Celtic's issues relating thereto.

Having overruled all of Celtic's issues on appeal, the trial court's judgment is affirmed.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 15, 2014
Opinion Delivered July 31, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.